[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
APPEARANCES:
For the State of Connecticut:
Dennis O'Connor, Esq.
Sr. Assistant State's Attorney
For the Defendant:
R. Bruce Lorenzen, Esq.
Assistant Public Defender
THE COURT: Good morning, ladies and gentlemen. Please be seated.
Start with the motion to suppress the statements.
Defendant claims, of course, the defendant [sic] should be suppressed. Some of the reasons: The defendant was in Hartford Hospital, wounded left leg and left arm, or had been injured. Indicated the defendant was under heavy medication and incapable of making a voluntary statement, incapable of making knowing waiver of his Miranda rights.
Some of the facts I considered is that the defendant evidently called the detective, wanted to talk to him. There was a call twice to the detective. Detective went to the hospital, advised the defendant of his constitutional rights. Defendant stated, and signed the waiver form, that he understood his rights. Was giving a waiver. Waived his right to counsel.
And in testing his voluntariness is whether an examination of all the circumstances shows that the conduct of the police was such as to overbear the defendant's will to resist and bring about a confession not freely self-determined.
Factual inquiry into the voluntariness focuses primarily on the conduct of the law enforcement officials. Coercive police activity is a necessary predicate to the finding that a — that a confession is not voluntary, within the meaning of due process of the Fourteenth Amendment.
With regard to the meds, and so on, that it's claimed he was under, it does not, in and of itself, render a subsequent admission inadmissible. It may be one factor in determining the voluntariness.
As I look at the record, I find no evidence of coercion in police activity. Detectives made no threats or promises to the defendant. There would seem to be a calmness in the demeanor of all the people involved. Defendant was not deprived of any personal comforts. The defendant requested to continue when, at one time, the detective suggested termination.
The defendant was capable of deciding to volunteer the statements. It appears he was not in pain. There was no slurring of speech. He seemed to be alert. No drowsiness. He was breathing normally. Defendant appeared to be extremely rational. Showed no confusion. Appeared to understand all the detective's questions and the procedure that was going on.
The actions and the words of the defendant, with regard to the waiver of Miranda rights, we may infer that he understood and voluntarily waived those rights by actions and his words.
The State has demonstrated that a — that the defendant understood his rights and the waiver of those rights. Defendant understood and voluntarily waived his Miranda rights.
At no time did the defendant indicate he did not wish to speak with the detectives or continue speaking with them. No time did the defendant request an attorney. Defendant is — again, appeared to be alert and responded to the police questions in detail.
State, having the burden of proving beyond — by a preponderance of the evidence the defendant knowingly and intelligently waived hisMiranda rights, including a right to remain silent, The Court finds that it is supported by substantial evidence here and the totality of the circumstances.
And the motion is denied.
With regard to the identification, the defendant claims that the show-up identification was unnecessarily suggestive. Officials should have waited for the photographic ID. CT Page 4666
And under one of the cases, I find that — and we talked about that as well settled, that in determining whether identification procedures violate a defendant's due process rights, the required inquiry is made on an ad hoc basis and is two-pronged.
The first prong, it must be determined whether the identification procedure was unnecessarily suggestive. If it is so found to be so, it must be determined whether the identification was, nevertheless, reliable, based on the examination of the totality of the circumstances.
And the defendant has the burden of — the — in moving to suppress the identification evidence, to establish that the identification evidence resulted from use of an unconstitutional procedure by the authorities.
The linchpin in determining the admissibility of identification testimony is reliability. The question is whether the — under the totality of the circumstances the identification was reliable, even though confrontation procedures may have been suggested.
Let me go into that a little bit. It has been represented by the defense that, generally, one-on-one confrontations are inherently and significantly suggestive because they convey the message that the police believe the suspect is guilty.
Also, hospital show-ups are particularly suggestive and have been considered, in some cases, unnecessary when the witness or the suspect has been in no immediate danger of death. And that's been presented by the defense.
However, such procedures will not always constitute impermissible suggestiveness and may be appropriate where the exigencies of the circumstances make an immediate viewing necessary to either hold the defendant or release the suspect and continue on with the investigation with a minimum of delay.
And I think that is present here in this case to an extent. I do not find that the — I think that the — this procedure fell short of being impermissible. I don't think that it was unnecessarily so.
But, in any event, I think, in looking at the facts in the case, we have some factors to be consider — considered: Opportunity of the witness to view the criminal at the time of the crime. And we know that that was evident here in instances of both the witnesses. CT Page 4667
Witnesses degree of attention. And they have testified that a gun was pointed at them. And they backed off or took off. And indicated that they were — when a gun's pointed at you, you're very attentive. And I — I think that's true.
Accuracy of the witness's prior description of the criminal. They both described the — the individual.
The level of certainty demonstrated by the witnesses at the confrontation. They were both positive. They — they didn't waiver at all with regard to their identification at the time of the confrontation.
The length of the time between the crime and the confrontation was not a long period of time. It was a rather short period of time. And in one of the cases, I — they did have an opportunity to look the defendant right in the face.
And I'm reminded that a good hard look will pass muster even if it occurs during a fleeting glance. And that, which I think we had more than a fleeting glance here.
I find that the identification — well, let me just — in view of the totality of the circumstances, and although I — I don't necessarily dismiss the suggestive — that the — this matter was unnecessarily suggestive, I go to the reliability and find that the identification of the defendant by both witnesses was sufficiently reliable under the totality of the circumstances to warrant its admission. So that the motion to suppress the identification is denied.
So both motions are denied.
Anything else, gentlemen?
MR. O'CONNOR: No, sir.
THE COURT: Very well. (pause)
MR. LORENZEN: Thank you, judge.
THE COURT: You're welcome. Thank you, gentlemen.
MR. LORENZEN: I think the only thing, housekeeping-wise, outstanding is Mr. Davis's record and what might be admissible on Mr. Davis's testimony. CT Page 4668
MR. O'CONNOR: I did not bring that package up to court with me.
MR. LORENZEN: And, frankly, I didn't expect to be arguing it today either at least not at this moment. I just wanted to make The Court aware that we —
THE COURT: Is — is that the motion in limine?
MR. LORENZEN: Yes, sir.
THE COURT: Yeah. Well, we can do that if we don't — I usually wait and do them on the trial, —
MR. LORENZEN: Sure.
THE COURT: — if it comes up.
MR. O'CONNOR: That's fine.
MR. LORENZEN: Sure.
THE COURT: And depending upon whether it's the first witness who you're going to put on, that makes a little difference. But if it's going to be down the line a little bit, I usually wait until we do it on the trial.
MR. O'CONNOR: I can — I can indicate to The Court and to counsel, against whom I have not tried any cases thus far, that basically I take a pretty conservative approach regarding the defendant's record. And I will ask to name a felony that goes directly to veracity. For instance, burglary, robbery, larceny, perjury, bribery.
And if it is not a felony that goes to — directly to veracity, I use an unnamed felony. Just say, "Aren't you the same person who's convicted of a felony on such-and-such a date?"
And I am fully aware of our ten-year range on — on convictions for felonies. Ten years from the date of release of — from prison for that Particular felony. And I don't ask anything in excess of that ten-year time frame.
So, I — I pretty much hew to the — what Nardini and progeny indicate.
THE COURT: Okay. We can take that up at the time of trial.
MR. LORENZEN: Thank you, judge. CT Page 4669
THE COURT: Mm-hmm. Thank you, gentlemen.
MR. O'CONNOR: Thank you, Your Honor.
 RECESS
Wollenburg, J.